CROSBY *v.* CITY OF GREENVILLE.

1. ADVERSE POSSESSION—EVIDENCE—STREETS.

   Evidence in a suit to quiet title to a city street reviewed on appeal and *held* to sustain the decree and finding of the circuit judge that complainant had failed to establish his claim of adverse possession.

2. SAME—HIGHWAYS AND STREETS—CITIES—DISTINCTIONS.

   There is a distinction between obtaining title by adverse possession as against an individual and gaining rights to

part of a city street, as against the municipality, and it
has been said to arise from the fact that the abutting
property owner has the right against all the world, even
including municipal corporations, to occupy and use the
street in any reasonable way he may wish, so long as he
does not interfere with public travel thereon; he must
go so far in order to acquire adverse title as to do acts
which in themselves constitute a warning to the public
that he is exceeding his right as an abutting owner, and
actually claims the property as his own.[1]

3. SAME—USE OF STREET.
The owner of land which abuts on a public way may exer-
cise jurisdiction over it in any reasonable way he wishes
so long as he does not interfere with the public easement
or obstruct travel over it.

4. SAME—ELEMENTS.
Possession, in order to ripen into a title to land, must be
actual, continuous, visible, notorious, distinct and hostile
to that of the real owner. The acts must be such as, if seen
by the proprietor, would clearly apprise him that the
party doing the acts claims ownership of the property.

5. SAME.
To constitute adverse possession it is necessary to show
that the acts of ownership were of such character as to
openly and publicly indicate an assumed control or use
of them such as is inconsistent with the owner's claim
to the premises in question.

6. SAME—STATUTES.
The policy of permitting title to be acquired to streets and
highways by adverse possession is of doubtful expediency
and has been changed by Act No. 46, Pub. Acts 1907.

7. SAME—DEDICATION—ACCEPTANCE.
It is not essential that every part of a highway in length
or width should be worked, improved, and traveled, in
order to show the intent of the public to accept a dedica-
tion.

8. SAME—PLAT—STREETS.
Having platted certain lands and adjoining streets with-

[1] For the rights acquired as against the public by adverse
possession of highway or city street, see note in 18 L. R. A. 146.
Upon the question whether public user is an acceptance of a
dedicated highway, see note in 18 L. R. A. 510.

out express words of dedication, the owners may be bound by a dedication if the public indicates its intention to accept the proposal by using and improving them.

9. SAME—ESTOPPEL.

Where complainant who claimed title to part of a city street by adverse possession had deeded premises bounded on the avenue as described in the deeds of conveyance, and his grantors had in the same manner recognized its existence, he was estopped from claiming any part of the street as shown by the dedicated plat: those who purchased lots on the street thereby became vested with an interest in the street upon which their lots abut, and had a right to insist that it be kept open.

10. DEDICATION—ACCEPTANCE—STREETS.

The right to make a common law dedication for street purposes is not abridged by the statutory regulation specifying the ways in which property shall be dedicated to the public. It is not necessary that any formal action be taken by the city or municipality; user and improving the street or way or any part thereof are sufficient.

Appeal from Montcalm; Davis, J. Submitted October 8, 1914. (Docket No. 19.) Decided December 19, 1914.

Bill by James S. Crosby against the city of Greenville to quiet title to real property. From a decree for defendants, complainant appeals. Modified and affirmed.

*N. O. Griswold,* for complainant.

*Charles L. Rarden (C. B. Rarden,* of counsel), for defendants.

STONE, J. In this cause the bill of complaint was filed to obtain a decree to quiet the title of complainant in and to that portion of Franklin avenue, so called, lying east of the west 43 feet thereof, and extending from Montcalm street north 173 feet, in the city of Greenville. The bill alleges that on or about January 17, 1853, John Green, Manning Rutan, Morton

Shearer, James B. Chamberlain, Abel French, George Loucks, Joseph Hart, Stephen Minard, and Stephen Rossman made and executed a certain plat of the village (now city) of Greenville, and caused the same to be recorded in the office of the register of deeds of that county. It is further claimed, and seems to be conceded, that there were no words of dedication used in any portion of said plat as executed by said proprietors, and the surveyor who surveyed the same, but that the streets, lanes, alleys, and public grounds of said village were described in said plat by giving the length, breadth, and points of *termini*, and were simply called by a name assigned them as streets, but there were no other words of dedication.

The complainant claims to own and hold the above-described premises by adverse possession. The defendant the city of Greenville answered admitting the plat substantially as alleged in the bill of complaint, but claiming that there had been an acceptance of the offer of dedication contained in the said plat, and claiming that the city had taken possession of said Franklin avenue and had expended public money in the improvement thereof, at least as to the west portion thereof, and claiming that it was lawfully entitled to hold and use the same as a public street in the city of Greenville. The other defendants in the case, Ambrose J. Ecker, Frank Wickham, and Elizabeth Wickham, were not made defendants originally, but upon petition were admitted as defendants, and they filed answers substantially the same as that interposed by the city of Greenville. These defendants claim to own, or to be interested in, the piece of property fronting on Montcalm street and lying east of the east line of Franklin avenue.

The record discloses the following descriptions of certain streets as contained in said plat, which plat is not fully set out in the record. The portion affecting Franklin avenue is as follows:

"(5) Description of Franklin Street: Commencing on the south line of said section nine, 26½ rods west of the southeast corner of section nine, and running thence north four rods wide, 94 rods to the center of Montcalm street hereinafter described."

"(14) Montcalm Street: Commencing on the east line of section number nine, 20 rods and 22 links on the north line of Grove street and running thence west 4 rods wide about 88 rods; thence west 15 degrees north about 74 rods to the southwest corner of lot number 76."

"(16) Franklin Avenue: Commencing on Montcalm street at the north end of the west line of Franklin street and extending east eight rods wide; thence running north 8 rods wide to Loucks & Company's millpond."

The *locus in quo* is shown by the annexed diagram, known as "Exhibit D" in the record:

The record discloses some concessions and admissions of counsel which are pertinent and significant as to the extent of the controversy in this case. Upon proceeding to take the testimony in open court, counsel for defendants said:

"I appear for the city and the old office lot, Eckers and the Wickhams. Now, so far as the city of Greenville is concerned, I would say that if Mr. Griswold concedes that line, drawn here by Mr. Anderson as the northern limit of Franklin, to be the north line or the end of Franklin avenue, so far as the city is concerned we will accept that as so, with one excep-

tion: That it cannot and does not affect the rights of the Wickhams as abutting property owners."

In the brief of counsel for complainant we find the following:

"The defendants concede to the complainant all north of their dotted line across Franklin avenue, as shown in Exhibit D. The complainant does not claim the west 43 feet of Franklin avenue south of that dotted line. Consequently the land in dispute is 90 feet east and west by 113 feet north and south, located in an angle of the two streets as used and occupied."

Taking counsel at their word, we think that the controversy is confined to the territory last above described, to wit, 90 feet east and west by 113 feet north and south, being the east 90 feet in width and 113 feet in length of Franklin avenue north of Montcalm street.

We have read the entire record with much care and are of the opinion that the circuit judge reached the correct conclusion in decreeing the property in question to be a legal public street and highway, and the right to possession thereof and title thereto to be in the city of Greenville for street and highway purposes, and in dismissing the complainant's bill of complaint.

We are of opinion that the complainant has not sustained the burden of proof in this case necessary to show adverse possession of the premises in question. We should bear in mind that there is a broad distinction between obtaining title of land by adverse possession as against an individual, and gaining title to a portion of a city street as against a municipality. It has been said that this distinction lies in the fact that abutting property owners have the right against the world, and even against municipalities, to occupy and use the street in any reasonable way they wish so long as they do not interfere with the public travel thereon. In order to gain title by adverse possession to a portion of a public way, the occupancy must be

such as to warn the public that the occupant is going beyond his right as an abutting owner and is actually claiming the property as his own. It should be stated here that, under the evidence, the two buildings which were erected by the complainant, within the limits of what is claimed to be Franklin avenue, stand north of the premises which it is conceded by complainant's counsel are involved in this litigation; that is, north of the point 113 feet north of Montcalm street. We are therefore not concerned as to the character or permanence of those buildings, as they are not within the territory with which we are dealing.

The record shows that, during the time the complainant claims to have been in possession of the premises involved, he was the owner of a strip of land adjoining to, and lying east of, the eastern boundary of Franklin avenue. We think that the owners of the land abutting on a public way may have the lawful right to use and exercise jurisdiction over it in any reasonable way they wish, so long as they do not interfere with the public easement, or obstruct the travel over the same. Thus it conclusively follows that acts upon and uses of a public way, which might well be evidence of a claim of title if individual property was concerned, may be no notice at all to the public that a title is claimed in a street or way.

Counsel have discussed authorities in other States, but we need not go outside of our own decisions to establish the principle as to occupancy which we have just referred to, and to show that the occupancy of the premises in question in this case was not such as to ripen into title by adverse possession. Possession, in order to ripen into a title to land, must be actual, continuous, visible, notorious, distinct, and hostile to that of the real owner. *Smeberg* v. *Cunningham*, 96 Mich. 378 (56 N. W. 73, 35 Am. St. Rep. 613), and cases there cited.

Acts of possession, in order to constitute adverse

possession, must be such as, if seen by the party whose claim is sought to be divested, would clearly apprise him that the party doing the acts claimed the ownership of the property. *Chabert* v. *Russell,* 109 Mich. 571 (67 N. W. 902).

To constitute adverse possession it is necessary to show that the acts of ownership are of such character as to openly and publicly indicate an assumed control or use such as is consistent with the character of the premises in question. *Whitaker* v. *Shooting Club,* 102 Mich. 454 (60 N. W. 983) ; *Murray* v. *Hudson,* 65 Mich. 670 (32 N. W. 889). The character of the possession necessary to constitute adverse possession as against the public is well illustrated in the language of this court in *Smeberg* v. *Cunningham, supra; City of Mt. Clemens* v. *Sanitarium Co.,* 127 Mich. 115 (86 N. W. 537). And bearing specifically upon the question as to public ways, see *Village of Grandville* v. *Jenison,* 84 Mich. 54 (47 N. W. 600) ; *Marble* v. *Price,* 54 Mich. 466 (20 N. W. 531) ; *Village of Red Jacket* v. *Pinton,* 126 Mich. 197 (85 N. W. 567). In the last-cited case it is said:

"When one seeks to obtain land against the public by adverse possession of a part of a street, he should make out a clear case, and the possession should be of such a character, and under such circumstances, as to warrant the conclusion that the municipal authorities must be held chargeable with notice of the adverse possession and with acquiescence therein."

This court has said that the propriety of permitting title to be obtained in this way to a public highway is of more than doubtful expediency and is not common in other jurisdictions, although it has been sanctioned here when it has been clearly established. The policy of the State has now been changed by legislative enactment. See Act No. 46 of the Public Acts of 1907. This legislation, however, has no application here.

We find from the evidence in this case that, soon

after the recording of the plat in question, which we should treat at least as an offer to dedicate the premises in question to public use, the then village authorities of Greenville proceeded to expend public money upon the west portion of the street in question and to use the same as a street. It has been repeatedly held that it is not essential that every part of the highway, in length or width, should be worked and traveled in order to show the intention of the public to accept the entire highway. *Neal* v. *Gilmore,* 141 Mich. 519 (104 N. W. 609) ; *Nye* v. *Clark,* 55 Mich. 599 (22 N. W. 57) ; *White* v. *Smith,* 37 Mich. 291; also, the authorities cited. This rule applies as well to common-law dedications, or dedications *in pais,* as to statutory dedications.

We think we have already said enough to dispose of the case, but it might be added that the record shows such a recognition on the part of the complainant and his grantors of the existence of Franklin avenue as being eight rods in width, as to estop them from claiming any part thereof. It appears that by repeated conveyances the complainant and his grantors have deeded premises bounding the same upon this avenue, thereby recognizing its existence. The purchasers of lots at once become vested with an interest appurtenant to the streets, including the rights of abutting owners in the streets upon which their lots abut, and they have a right to insist that the streets shall be kept open. This court, in *Plumer* v. *Johnston,* 63 Mich. 165, at page 173 (29 N. W. 687), said:

"It is also well established, with respect to a purchaser of lots described as bounded on a street, that the vendor is estopped from shutting it up so as to prevent his vendee from making use of it for his own accommodation in the enjoyment of his purchase.    *    *    *    The doctrine is well established that the grantee of a lot bounded upon a street or other highway takes to the center of such street, subject only to the public easement, unless something appears upon the plat, or

in the terms of the conveyance, excluding the title from passing under a boundary so described."

See *Riedinger* v. *Railway Co.*, 62 Mich. 29-45 (28 N. W. 775).

The rights of an abutting owner in a city street are well settled in this State. *Smeberg* v. *Cunningham, supra.*

Whatever the irregularities were about the claimed dedication here, it is very evident that the intention to dedicate was present, and the attempt was made by the making and filing of the plat in question, and those who made the dedication and their successors under this record seem to have recognized and confirmed the dedication of this avenue by conveying the abutting lots with special reference thereto as a public way; and no one of them or their successors ever afterwards assumed jurisdiction or control of any of the lands comprehended within said avenue, or attempted to convey away any part of it, until we come to the conduct of this complainant.

The right to make a common-law dedication is not abridged by the statutory regulations providing for dedication of certain specific ways. *People* v. *Beaubien,* 2 Doug. (Mich.) 256-270; *Baker* v. *Johnston,* 21 Mich. 319, 340; *Village of Grandville* v. *Jenison, supra.* The language of this court in *Michigan Central R. Co.* v. *Bay City,* 129 Mich. 264-268 (88 N. W. 638), is appropriate.

As to what will constitute a sufficient acceptance of an offer to dedicate, it is settled in this State that it is not necessary that any formal action be taken by a municipality in order to constitute an acceptance of the highway or street, but making improvements and repairs and user thereof, or any portion thereof, are amply sufficient to constitute acceptance.

Under the concession of counsel, to which we have alluded, we think the decree in this case should be

modified so as to embrace 113 feet in length, instead of 173 feet, and 90 feet in width, instead of 89 feet, as described in the decree. With this modification the decree of the circuit court will be affirmed, with costs to defendants.

MCALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.