## LACEY, Appellant, v. JUDGE, et al, Respondents

(3 N. W.2d 115.)

(File No. 8468.  Opinion filed March 25, 1942.)
Rehearing Denied May 5, 1942.

**Charles Lacey,** of Sioux Falls, for Appellant.

**Bielski, Elliott & McQuillen,** of Sioux Falls, for Respondents.

RUDOLPH, P. J.  In this action plaintiff seeks to have a certain strip of land declared a public highway and to enjoin defendant from interfering therewith.  The land in question is a two rod strip located entirely upon the defendants' farm and immediately north of the plaintiff's farm.  The strip extends 160 rods from east to west.  The action was tried to the Court and after the evidence was presented, the Court entered its judgment dismissing the complaint of the plaintiff.  Plaintiff has appealed.

In his complaint the plaintiff makes certain claims to rights in this two rod strip apart from claiming that it constitutes a public highway.  At the trial the plaintiff disclaimed any ownership of the land and claimed rights there-

in only as a public road. We quote the testimony of appellant as is set forth in his brief.

"Q. You knew you didn't have any title to the land on which this public road was to be established, didn't you? A. I didn't claim any.

"Q. If you do not understand the question, Mr. Lacey, on what ground do you make claim now to owning any part of the two rods in question in this case? A. It is a public road, I don't claim to own any of it.

"Court: You claim you have the right to have it kept open as a public road but do you claim that you own the land? A. No.

"Q. You don't make any claim in this suit that you own any part of the land north of the north line of the south half of the northeast quarter? A. No, it is a road."

So apart from other considerations disclosed by the record which would defeat any private claim to or right in this strip of land, appellant is limited by his own assertions of right at the trial to claiming rights to the land in question only as a public highway.

The facts upon which appellant bases his claim that the two rod strip is a public highway, are substantially as follows: In 1901 the quarter section upon which this two rod strip is located was for sale. The plaintiff was desirous of purchasing the south half of the quarter. He contacted the late A. B. Kittridge, who together with Susan Judge, one of the defendants, owned land immediately to the north of this quarter section. Prior to this time, the south two rods of the quarter section being purchased had been established as a public highway. The south half of this quarter section was the better farming land and it was finally agreed between the plaintiff, Mr. Kittridge and the late Mr. Harold E. Judge, husband of the defendant Susan Judge, that the plaintiff would purchase the south half of the quarter and Mr. Kittridge and the defendant, Susan Judge, the north half. It appears, however, that the name of Susan Judge was never mentioned in these negotiations, that Mr. Lacey was of the impression he was dealing with Mr. Kittridge

and Mr. Judge individually, and that these two men were to be the purchasers of the north half of this quarter section. Mr. Lacey testified that in the course of purchasing this land, Mr. Judge and Mr. Kittridge agreed that this two rod strip would be established as a public highway and further, as stated in appellant's brief:

"I agreed to vacate the section line highway between sections 14 and 11, but they didn't bring up the petition to the Town Board. I also agreed to let them have two rods off the west end of my south half to get up what they called their building place. A wagon road was already on there before I bought the land. I have never dedicated the west two rods of my eighty as a public highway. When I bought the South Half of this quarter, the two rods used for East Sixth Street had already been taken off, and I never bought that two rods. I did not give them anything else in the way of consideration for this two rods in question. I knew that this two rods in question was not a part of the South Half of the Northeast Quarter, and I knew that if a highway was established there it was coming off of Mrs. Judge's land."

In explanation of the above testimony, it should perhaps be stated that the land in question is located in Section 14 referred to in the testimony and the land which Mrs. Judge and Mr. Kittridge owned prior to their acquisition of this land in Section 14 was located in Section 11 immediately to the north of Section 14. The road existing between Section 11 and Section 14 had never been opened for public travel and it was this road which Mr. Lacey states he agreed to vacate as a part of the transaction. This road has never been vacated. The exact nature of the rights which Mr. Lacey asserts in this road based upon this alleged agreement with Mr. Kittridge and Mr. Judge are not entirely clear from the record, but whatever those rights were to be, conceding that the alleged agreement was binding on Mrs. Judge, we are convinced that the record fairly establishes that they were dependent upon the vacation of the road between Sections 14 and 11, which has never been accomplished.

■ From 1901 until about 1905 this two rod strip was used quite extensively as a public road. In 1905 the road to the south of the plaintiff's eighty was improved and most of the travel since that time has been confined to the improved road. However, this two rod strip was traveled to some extent for several years after 1905 and throughout the years it has been used to haul gravel by a number of persons. The record is not entirely clear but it appears that gravel haulers use this road to go from the highway on the east to a gravel pit located somewhere west of this quarter section. At the present time and at least since the highway to the east of this quarter section was paved, there is and has been no approach from the highway to this two rod strip where it joins the right of way, but at a distance approximately 150 feet north from the north side of the east end of the two rod strip, there is a dirt fill upon which it is possible to leave the highway and drive to this strip of ground. During all of the time this alleged public road has been in existence, it has never been graded, or in any manner improved. This feature of the case, in our opinion, is decisive. Concededly there has been no formal dedication of this strip of land as a public highway. A determination that a public highway exists must of necessity, be dependent, under this record, upon the fact that since 1901 the public has used this strip of ground as a highway. However, under our laws as they now exist, mere use by the public is not sufficient to establish public acceptance of land as a highway. In the recent case of First Church of Christ, Scientist v. Revell, 68 S. D. 377, 2 N. W.2d 674, 677, this Court had occasion to·consider this question under a state of facts very similar to those disclosed by this record. In that case it was said: ·

"In expounding the common-law doctrine of implied dedication of private property to a public use in an early case this court said, 'Conduct on the part of the owner that is clearly expressive of an intention to dedicate usually amounts to dedication, if acted upon by the public in a manner which clearly justifies the inference of an acceptance.' Larson et al. v. Chicago, M. & St. P. Ry. Co., 19 S. D. 284, 103

N. W. 35, 37; Mason v. City of Sioux Falls et al., 1892, 2 S. D. 640, 51 N. W. 770, 39 Am. St. Rep. 802. By the enactment of Chapter 100, Laws of 1893, reading in part, 'The continued use of any road or way heretofore traveled or which shall hereafter be traveled by the public * * * across the land of any private person * * * shall not be deemed to have constituted such road or way a legal highway, or a charge upon the town in which the same is situated; and no rights or benefits shall inure to the public or any individual by the use thereof,' (SDC 28.0104), it became settled that a mere showing of public use of a roadway of the character under consideration will not support an inference of dedication to public use. Roche Realty and Investment Company v. Highlands Company, 29 S. D. 169, 135 N. W. 684, 686. Because public acceptance of this claimed dedication is based solely on user by members of the public, we hold that the record fails to establish an implied dedication at any time subsequent to July 1, 1893, the effective date of Chapter 100, Laws of 1893, quoted supra."

■ It follows that appellant's claim that the evidence is sufficient to establish that this strip of ground is a public highway cannot be sustained. In view of this holding and the record as made, we find no merit in appellant's claim that this claimed public highway constitutes the boundary between the farms.

The judgment appealed from is affirmed.

All the Judges concur.