GRANADER *v.* VILLAGE OF BEVERLY HILLS.

1. MUNICIPAL CORPORATIONS—VILLAGE ZONING ORDINANCE—PRESUMPTIONS.

   A village zoning ordinance is presumed on appeal to be valid.

2. SAME—ZONING ORDINANCE—PRESUMPTIONS.

   A village zoning ordinance is presumed to be valid, but each zoning case must stand by itself and be judged by the circumstances present.

3. SAME—ZONING ORDINANCE—HIGHWAY RIGHT-OF-WAY—PARKING.

   Assumption of trial court in suit to enjoin enforcement of a zoning ordinance that highway right-of-way between plaintiffs' corner lot and the adjoining highways was available to plaintiffs for use as a parking lot, thus changing the highest and best use to which the lot could be put, *held,* not warranted by the record.

4. HIGHWAYS AND STREETS—FEE TITLE—ABUTTING LOT OWNER—EASEMENT FOR PUBLIC HIGHWAY.

   An abutting lot owner in this State owns the fee of the land over which a street has been established, with the right to its use, subject to the public easement.

5. COSTS—ZONING ORDINANCE—PUBLIC QUESTION.

   Costs are not allowed in suit to enjoin enforcement of a village zoning ordinance, where the case is remanded for further proceedings, a public question being involved.

Appeal from Oakland; Moore (Arthur E.), J. Submitted Division 2 June 2, 1966, at Detroit. (Docket No. 838.) Decided October 25, 1966.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Zoning §§ 16, 256.
[3] 58 Am Jur, Zoning § 101.
[4] 25 Am Jur, Highways §§ 151, 163.
[5] 5 Am Jur 2d, Appeal and Error § 1009.

Complaint by Harry Granader and Sylvia Granader against the Village of Beverly Hills to test the validity of a zoning ordinance. Motion to dismiss granted at close of plaintiffs' proofs. Plaintiffs appeal. Remanded for further proceedings.

*Paruk & Miller,* for plaintiffs.

*Bond & Dillon,* for defendant.

FITZGERALD, J. Plaintiffs attacked the validity of a zoning ordinance of the village of Beverly Hills as it applied to their property located on the southwest corner of Fourteen Mile road and Southfield road in Oakland county, and described in their complaint as having dimensions of 101.59 feet on Southfield road by 110 feet on Fourteen Mile road. Fourteen Mile road is 2-lane and comes to a dead-end about one-fourth mile west of the property, and the zoning ordinance limits uses of parcels along it to nonretail businesses in the village of Beverly Hills.

The classification B–1 limited the use of plaintiffs' property to nonretail business. They requested defendant village to rezone the parcel to a B–2 classification, retail business, so that they could construct a filling station. This request was denied and the instant court action ensued.

Plaintiffs claimed that the Beverly Hills zoning ordinance, insofar as it affected their property, bore no reasonable relationship to the public health, safety, welfare or morals of the inhabitants of the village, and asked that the ordinance, No 29, adopted in 1959, be declared unconstitutional, void, invalid and of no legal force and effect. Following trial of the matter with the taking of considerable expert testimony, the court granted defendant village's motion to dismiss at the close of plaintiffs' proofs.

On appeal, plaintiffs maintain that they established a *prima facie* case that the ordinance in its application to their property was confiscatory, unreasonable, unconstitutional and therefore invalid. They further allege that the trial court committed error in finding that plaintiffs could use as additional parking area, a strip of land lying between their lot line and the highway, thereby enlarging the usable dimension of their property.

At the outset, we are met with the presumption of validity which cloaks zoning ordinances of this nature. The particular facts and opinions adduced here, however, provide an excellent place for application of the observation that each zoning case stands by itself and must be judged by the circumstances present.

An exhaustive review of the record before us leads us to temporarily defer consideration of appellants' contention concerning the making of a *prima facie* case of unreasonableness as the ordinance applies to their property and to dwell on the finding that they had available to them for development a considerably larger area, increasing plaintiffs' usable land by 64 feet on each side, yielding what is called in the trial court's finding of law and fact, a parcel "which is 174 feet by 165 feet." In its opinion, the trial court makes the following statement:

"At the point involved now is a two-lane highway. The evidence shows that it is soon to be a four-lane highway, and that a right-of-way extends west of the projected future four-lane highway so that there is 64 feet of unoccupied right-of-way beyond the westerly part of the paved future highway and running from that to the front line of the lots in question; namely, the easterly line of the property in question."

Later in the opinion, the trial court indicates a belief that such area could be used for parking.

But from whence comes the basis for awarding plaintiffs the use of this quantum of property which is admittedly highway right-of-way?

A review of the transcript indicates that the genesis of this figure was from the lips of the attorney for defendant village as he cross-examined plaintiffs' witness, and architect:

"*Q.* And are you aware that there presently exists 64 feet from the south side of Fourteen Mile road to the property line here?

"*A.* I wasn't aware of the exact distance. I knew it was considerable.

"*The Court:* Do you gentlemen agree that is the same on both sides?

"*Mr. Allen:* I don't agree. I don't really know what the right-of-way of the county right-of-way is.

"*Mr. Dillon:* We will have testimony."

But the testimony does not materialize. The figure, however, becomes implanted in the mind of the witnesses, counsel, and the court, not however, without considerable confusion arising therefrom as demonstrated by this portion of the transcript:

"*Q.* Now, if my figures are correct regarding the 64 feet on both sides of the road here on Southfield and on Fourteen Mile road, this would add, would it not, an additional 18,000 square feet surrounding the property; that is, along its width north and south on Southfield road and east and west on Fourteen Mile road?

"*Mr. Allen:* I would object to that, Your Honor, because this is Oakland county property.

"*The Court:* You may take an answer.

"*A.* Would you ask that again.

"*Q.* 64 by 64 is 18,000, is that right?

"*A.* 64 and 64.

"*Q.* I am taking the dimensions of the property, the lengthwise and adding the additional 64 feet.

"*The Court:* 64 by 110, 64 by 100.

"*Q.* Would you agree?

"*A.* Would you ask the first part of the question again, please.

"*The Court:* This is a mathematical question, statement. I think we can accept the answer as mathematics brings it out.

"*Q.* Would you agree with me this would add an additional 18,000 square feet to the property.

"*Mr. Allen:* Now, Your Honor, again I would object to the question as calling for a conclusion, and an interpretation of law.

"*The Court:* I will take judicial notice of that.

"*Mr. Dillon:* That it does add an additional 18,000 square feet, Your Honor?

"*The Court:* Yes."

The testimony and confusion compound in the following exchange:

"*The Court:* On the record here I don't agree with your 18,000 square feet of usable highway space. Maybe I missed a point. But it seems to me there is 100 feet by 64 feet on Southfield.

"*Mr. Dillon:* 101.

"*The Court:* Well, 101.

"*Mr. Dillon:* Your Honor, Mr. Allen, himself, on the testimony here, said 101 by 110 feet is the size of these lots, of this property.

"*Mr. Allen:* The topographical matter is 101.69 feet on Southfield, and 110 on Fourteen Mile.

"*The Court:* That is what I mean. My question was that you got 64 times 101, which is 64,000, well, 6,464 feet. Now, on the other, Fourteen Mile road, you got 110 feet deep by 64, which would be 7,040.

"*Mr. Dillon:* Just one moment, please. Your Honor, the way this has been arrived at is to take the 101 by 64 feet, which would be from the south

boundary line of the property up to the north boundary line out to Southfield road.

"*The Court:.* Yes.

"*Mr. Dillon:* That would give us 6,400 square feet.

"*The Court:* Well, 6,464.

"*Mr. Dillon:* Yes. Then we start at the north boundary line of the subject property, from the west boundary line and extend it right over easterly to Southfield road, which is approximately 174 feet. This is 110 plus 64.

"*Mr. Allen:* You are using it twice.

"*Mr. Dillon:* No, no.

"*The Court:* He is using the corner. But exclusive of the corner, it makes 13,504.

"*Mr. Dillon:* 13,000.

"*The Court:* It is dubious of how much of that would be usable for any purpose.

"*Mr. Dillon:* Right. This is the 101 by 64, right to here, which is the north boundary line.

"*The Court:* Well, you said eighteen.

"*Mr. Dillon:* Well, if you take this, the 110 here, plus the 64, on the corner, it is roughly that.

"*The Court:* I agree. Well, this is the question, it is for you, Witness. If you have for use of parking 13,504 feet, you can build a very substantial building on the property, can't you?

"*A.* Yes, if this were taken into consideration."

That the court took this into consideration is borne out by the following from the court's opinion:

"There isn't the slightest question in my mind that the board of appeals of the defendant village of Beverly Hills not only would grant an appropriate variance for the use of the highway in front of the property for parking, but also it is my opinion that unless facts are shown which are not exhibited in this case, they would be arbitrary and capricious in denying the use of such property for public parking. This for many practical purposes means that the property in question at the southwest corner of

Southfield and Fourteen Mile road is not a parcel for total use 110 by 100, but is actually a parcel which is 174 feet by 165 feet."

We believe that acceptance of the 64-foot figure as available to plaintiffs for their use as parking area as a *fait accompli,* thereby enlarging the dimensions of their property, is a questionable, if not unwarranted, assumption. Defendants parry this fact with the statement that there is no testimony or other type of evidence in the record that appellants may not use this additional property for parking purposes in the development of their property. However, it is likewise true that there is no testimony that they *may* use this property and even its ultimate availability falls in the category of conjecture of high order.

It is not necessary to review extensively the fact that in Michigan a landowner who is the owner of the fee over which a street has been established, continues to own the fee, subject, however, to a public easement. It is established that the public is not now using the land in question between plaintiffs' property and the street, but evidence is sketchy that it may not be used. Indeed, the trial court in its opinion makes the statement:

"The growth of the area in question has been tremendous, I take judicial notice of this, and during the past comparatively short period of time Southfield road has been widened to its present good width south of the property in question."

And later:

"What may happen to Fourteen Mile road or its equivalent west of Southfield is a matter of great uncertainty. As one views the area and property now Fourteen Mile does not seem to be usable as a through road, other than for access to these fine homes in this area."

Cases are cited by both sides for the proposition that the area may or may not be used, specifically *People, ex rel. Director of Department of Conservation,* v. *LaDuc* (1951), 329 Mich 716, and *Highway Commissioners of Eagle Township* v. *Ely* (1884), 54 Mich 173, for plaintiffs, and *Smeberg* v. *Cunningham* (1893), 96 Mich 378 (35 Am St Rep 613), and *Crosby* v. *City of Greenville* (1914), 183 Mich 452, for defendants. These cases, however, did not deal with the reasonableness of a zoning ordinance, and in this particular instance can be said to have little bearing other than to demonstrate the rights of an abutting owner subject to the rights of the public.

The assumption of the availability of the extra land to plaintiffs as a parking area to enlarge the dimensions of their property and the conjecture about the future as it affects that availability leads us to the conclusion that the matter should be remanded to the circuit court for the county of Oakland for consideration of the validity of the zoning ordinance without respect to the possible availability of the right-of-way area or, in the alternative, the taking of testimony which will more narrowly define this proposition and support the fact with competent evidence rather than supposition.

The matter being remanded, consideration of the first question raised on appeal relative to the validity of the ordinance itself, is obviated.

Remanded for proceedings in conformity with this opinion. No costs, a public question being involved.

J. H. Gillis, P. J., and Quinn J., concurred.